Cornelius **GAINES**, Plaintiff-Appellant,

v.

Erskine **McGRAW** and P. C. Jenkins, **Defendants-Appellees.**

No. 30638.

United States Court of Appeals, Fifth Circuit.

July 14, 1971.

Rehearing and Rehearing En Banc Denied Sept. 28, 1971.

---

John D. Prince, Jr., G. Bennett Haynes, Jr., Birmingham, Ala., for plaintiff-appellant.

Herbert H. Henry, Asst. Atty. Gen., MacDonald Gallion, Atty. Gen., Joseph Victor Price, Jr., Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for defendants-appellees.

Before TUTTLE, WISDOM and INGRAHAM, Circuit Judges.

TUTTLE, Circuit Judge:

The unsuccessful plaintiff in this civil rights action appeals from the denial of his motion for judgment notwithstanding a verdict for the defendants, and for the failure of the trial court to grant a new trial, both on the ground that such failure was an abuse of the trial court's discretion, and on the ground that the verdict was clearly contrary to the instructions of the trial court respecting the issue of liability.

The facts, as the jury might have found them to be, stated most favorably in support of the verdict, were as follows:

At something after 10:30 at night, the plaintiff, Cornelius Gaines, driving his car with five passengers in it with him, turned off a paved highway onto a dirt road, and slowly came to a stop in front of, and facing, a state highway patrol car, the occupants of which had just released another automobile after charging the driver with improper lights. Defendant Erskine McGraw was a deputy sheriff of Wilcox County and was riding the highway patrol car with the highway patrolman, who is now deceased. McGraw was not in uniform as he approached the Gaines automobile, but he announced that he was a deputy sheriff and asked to see Gaines's driving license. Gaines opened the door and got out of the automobile driven by him, and disclosed his driving license to the highway patrolman, whereupon McGraw flashed his light into the front seat and saw an open knife on the front seat of the car, the front seat still being occupied by two other passengers, and the knife being partially under the leg of the passenger near the center of the front seat. Thereupon McGraw told Gaines that the knife was "illegal" and put Gaines under arrest for violating the Alabama statute prohibiting the carrying of concealed weapons. This statute, Title 14, Section 161, provides as follows:

"Except as otherwise provided in this chapter [other provisions are not applicable here], a person who carries concealed *about his person* a bowie knife or knife or instrument of like kind or description or a pistol or firearm * * * shall on conviction be fined not less than fifty, nor more than five hundred dollars, and may also be imprisoned in the county jail * * * for not more than six months."

Gaines protested his arrest, but was forcibly taken to the highway patrol car and then taken to the county jail.[1]

Appellant was booked into the jail either just before or just after midnight on Saturday-Sunday, and was kept there until the following Wednesday when he was released on bond.[2]

No warrant was issued for the arrest of the appellant, and none was written out until after the arrest and after he was lodged in jail, and it was then signed on the following Monday.[3]

The grand jury subsequently indicted Gaines under the statute, but the case was nol prossed.

It is not disputed that the statute describes a misdemeanor, and not a felony; that the Supreme Court of Alabama has held for more than eighty years as stated by the trial court in his charge to the jury:

"And I charge you that as a matter of law the Alabama courts have held that a knife on a seat under the circumstances before you—even if it was as Deputy McGraw said it was—would not support a charge of carrying a concealed weapon. Now the Alabama courts have decided that. And probable cause for making the arrest would not have existed."

The law of Alabama referred to by the trial court was articulated in Ladd v. State, 92 Ala. 58, 9 So. 401, in which the court said:

"While it is not necessary to a conviction that the pistol was carried on the person, yet it must have been so connected therewith that the locomotion of the body carried with it the weapon as concealed. When one's weapon is in a vehicle in which he is riding, and not attached to his person at all, it cannot be said to be concealed about his person, within the sense of the statute."

In Cunningham v. State, 76 Ala. 88, the Supreme Court said:

"'About the person' must mean, that it is so connected with the person as that the locomotion of the accused will carry the deadly weapon with him. This is the plain import of the words, in common parlance."

Moreover, the appellees, in their briefs in this court, state:

"For purposes of this appeal, appellees will stipulate that the Alabama Supreme Court would not reverse Cunningham and Ladd."

Thus, we have the case of a man stopped on the highway at night by the defendant Deputy Sheriff, who is told to get out of his car and show his license, and when he does so it is apparent that there is an open knife on the seat of the car, which violates no law of the state of Alabama, and the driver is then arrested and taken to jail, booked and. indicted by the grand jury, whose action is, as it must have been, nol prossed.

The appellant bases his claim against Deputy McGraw on the latter's action in arresting him without a warrant, and without probable cause while not in the

---

1. The plaintiff included in his complaint the charges of beating and mistreatment by the officers, both at the time of arrest, on the way to the highway patrol car, and on the way to the jail. The officers countered with the claim that the plaintiff struck them to resist arrest. The jury has resolved this issue in favor of the defendants, and it is no longer in the case.

2. Plaintiff alleged that he was deprived of an opportunity to get in touch with friends or relatives, was denied the use of a telephone and was unable to make any contact with any outside person for several days. However, under the charge of the court, such treatment would have entitled the plaintiff to a recovery, irrespective of the primary issue of the legality of his arrest. The jury's verdict in favor of the defendants must, therefore, be taken to have decided this issue against the plaintiff, and in favor of the defendants who stated that Gaines was offered an opportunity to telephone.

3. Although the officers testified that this was the usual practice, it is difficult to see what purpose an arrest warrant serves if procured in this manner.

commission of any illegal act. His claim against P. C. Jenkins is that as sheriff he was responsible for the actions of his deputy and he was responsible for the illegal detention in the county jail following the arrest.

The trial court recognized the Alabama law with respect to the right of an officer to arrest another without a warrant, as provided in Title 15, Section 154, which provides that an arrest by an officer without a warrant is permissible only if a public offense or breach of the peace is committed in his presence. The appellees concede that Cornelius Gaines was not guilty of an offense at the time of his arrest. The trial court stated several times in his charge to the jury that there was no probable cause in the circumstances present at the time of the arrest, and the appellees further make the following concession in their brief —" * * * they do not contend that probable cause alone will save police officers sued under Section 1983, supra."

In sum, the defendants rely solely on the Supreme Court's decision of Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288, for the proposition that, no matter how guiltless the arrested person was, and no matter that no warrant was obtained, there was somehow a burden on the arrested person to prove that the officers arresting him actually knew that he was not committing a crime before he can recover. We put it in these terms, because, although appellees here rely upon their "good faith" as the only defense to the right of the appellant to establish liability against them, there is not a word in the record of the trial that indicates that Deputy Sheriff McGraw did not know the Alabama law respecting the offense of carrying concealed weapons; there is not a line of evidence other than the fact that McGraw made the arrest to indicate that he had any reason to believe that while Cornelius Gaines was standing *outside of his automobile* and with a knife (nowhere testified to as a "bowie knife" or a "knife of * * * like kind or description") on the seat of the automobile in plain view,

Cornelius Gaines was guilty of any crime whatsoever. Thus, there was not even an effort to establish a defense of good faith.

Before the Supreme Court's decision of Pierson v. Ray, supra, this court decided Nesmith v. Alford, 5 Cir., 1963, 318 F.2d 110. In that case a white man and his wife were arrested in Montgomery, Alabama without a warrant under circumstances described by the court as follows:

"The plaintiffs were merely eating lunch with a group of Negroes. This was no crime. This was no breach of the peace."

In a suit by the white couple for the arrest that followed, this court held that under Alabama law,

"it is not necessary to show actual force, threats, or injury done to the individual's person, character, or reputation [footnotes omitted]. The lack of malice, the presence of good faith, or the presence of probable cause do not affect the existence of the wrong when the detention is unlawful [footnotes omitted]. If the act of the officer arresting a person without a warrant is unlawful, the imprisonment is false [footnotes omitted]." 318 F.2d 118–119.

Thus, it appears that in Alabama the facts here demonstrate clearly that the tort of false arrest was committed as demonstrated by the undisputed facts.

Appellees contend that the case of Pierson v. Ray, supra, adds a further ingredient to the action sought to be maintained by the plaintiff here under 42 U.S.C. 1983. Appellees rely especially on that paragraph of the opinion in *Pierson* which states:

"We hold that the defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983."

It is clear that the Supreme Court's decision in *Pierson* did not require the submission to a jury in every suit filed under Section 1983 the question as to whether the officers, who were subsequently determined to have acted illegally, nevertheless believed they had the right to act as they did at the time of the arrest. This is clear from the statement immediately following the above quotation:

"This holding does not, however, mean that the count based thereon should be dismissed. The Court of Appeals ordered dismissal of the common-law count on the theory that the police officers were not required to predict our decision in Thomas v. Mississippi, 380 U.S. 524 [85 S.Ct. 1327, 14 L.Ed.2d 265]. We agree that a police officer is not charged with predicting the future course of constitutional law."

Here, there was, of course, no question of predicting the Supreme Court's decision with respect to any statute. The officers undertook to arrest the appellant for something that was not a crime, which was not described in the statute to be a crime, by an ordinary reading of the language, and which the Supreme Court of the State of Alabama had almost in *haec verba* with the facts testified to here determined was not a crime. Moreover, was it not only perfectly clear that no crime was committed, but it is equally clear that the officer at the trial made no effort to prove that he thought the finding of the open knife on the seat of the appellant's car made him guilty of the offense for which he was purportedly arrested.

The good faith issue in the Pierson case was whether, as the officers testified, a crowd was gathering in the bus station and "that imminent violence was likely" which they testified was the fact. The testimony of the plaintiff ministers in *Pierson* was to the contrary. The court then said, "If the jury believed the testimony of the officers and disbelieved that of the ministers, and if the jury found that the officers reasonably believed in good faith that the arrest was constitutional, then a verdict for the officers would follow even though the arrest was in fact unconstitutional."

Here we have no such issue of fact touching on the ingredients of the crime alleged to have taken place in the presence of the arresting officer. The facts are all admitted, or at least are assumed to be as testified to by the arresting officer. Such facts did not constitute a crime under the laws of Alabama, nor did any person testify that the arresting officer believed they did. In *Pierson*, the actions testified to by the officers did constitute a crime as then defined by the Mississippi statutes, albeit, the statutes were thereafter declared to be invalid by the Supreme Court.

■ Although the case of Nesmith v. Alford was a diversity case based upon the common law of Alabama relating to false arrest and malicious prosecution, we think it points the way in which we should go in circumstances where a jury has made a verdict that cannot be sustained and where a judgment as to the liability part of the case is demanded by the evidence taken most strongly in favor of the prevailing party. That course is to direct that the judgment of the trial court overruling the motion for judgment notwithstanding the verdict be set aside and that a judgment be entered as to liability in favor of the plaintiff, leaving to the jury at another trial the measure of damages recoverable.

Neither party in briefs in this court has undertaken to distinguish the liability as between deputy sheriff McGraw who made the arrest together with the now deceased highway patrolman and Sheriff P. C. Jenkins who was McGraw's superior and who had responsibility for the detention of the appellant, but who, according to the findings of the jury did not know of his incarceration until the Monday morning after the Saturday night arrest. We shall, therefore, leave open to further proceedings in the trial court to determine the question of liability of the defendant, Jen-

398

kins, rather than attempt to research this Alabama law without help from the litigants.

The judgment is reversed, the case is remanded to the trial court with directions that it enter a judgment in favor of the plaintiff as to liability for the deprivation of plaintiff's rights under § 1983 by defendant McGraw and leaving to further proceedings in the trial court the determination as to liability of Sheriff Jenkins.

Reversed and remanded.

ON PETITION FOR REHEARING AND PETITION FOR RE-HEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.